IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

SALLY ALSTON,                          )
                                       )
     Plaintiff,                        )
                                       )
v.                                     )  No. 06-2141-JPM/dkv
                                       )
NATIONAL SAFETY INCENTIVES, INC.       )
and DANIEL HALL, Individually          )
and d/b/a NATIONAL SAFETY              )
INCENTIVES, INC.,                      )
                                       )
     Defendants.                       )
_____

**ORDER GRANTING DEFENDANT DANIEL C. HALL'S MOTION FOR PARTIAL SUMMARY JUDMGENT AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
_____

Before the Court are two motions for summary judgment: (1) Defendant Daniel C. Hall's Motion for Partial Summary Judgment (Doc. 64) (Hall's Motion); and (2) Defendants National Safety Incentives, Inc. ("NSI") and Daniel C. Hall's ("Hall") Motion for Summary Judgment (Doc. 65) (Defendants' Motion). Both Motions were filed March 31, 2008. Plaintiff filed Responses in Opposition to each motion on May 5, 2008. (Docs 68 and 71.) The Court held a hearing on these motions on June 4, 2008. For the reasons discussed at the hearing and in the foregoing analysis, the Court GRANTS Hall's Motion and GRANTS IN PART and DENIES IN PART Defendants' Motion.

## I. Background

NSI is a business that implements employee incentive programs. (Second Am. Compl. ¶ 8.) NSI's programs award points to employees who reach certain attendance, productivity, and safety goals. (Id. ¶ 9.) These points are redeemable for merchandise from the Quality Incentive Company, which publishes and distributes its catalogue in conjunction with NSI. (Id.) NSI receives a twenty five percent discount when it purchases from Quality Incentive.

Plaintiff, Sally Alston ("Alston"), worked as an independent contractor for NSI from 1999 until 2006. (Pl.'s Resp. in Opp. to Def.'s Mem. in Support of Mot. for Summ. J. 8; Def.'s Mem. in Supp. Of Mot. for Summ. J. 1.) Alston was not aware of the twenty five percent Quality Incentive discount. (D. Hall Dep. at 255-61; Alston Dep. at 315-20.)

Alston alleges that she and Defendants orally agreed that NSI would pay her five percent of their gross revenue on any contract she helped NSI to procure. (Am. Compl. ¶¶ 10, 11; Alston Dep. 124.) In 1999, Alston helped to procure the Merry Maids account for NSI. (Alston Dep. at 128-29, 155-56, 171-74.) Thereafter, Alston received monthly checks representing five percent of NSI's gross revenue from the Merry Maids account. (D. Hall Dep. at 74-74, 93-94, 206-08, 262-65.) She continued to receive a commission on the Merry Maids account until 2005, when

the Merry Maids corporate account was terminated. (D. Hall Dep. at 206-09.)

In 2000, Alston began marketing the NSI program to Terminix. (Alston Dep. at 71-74, 155-56.) In June 2002, Alston met with Quality Incentive's president, Scott Newman, to explain the NSI program so that Newman could discuss the program with his friend Steve Howard, who had recently been hired at Terminix. (Alston Dep. at 158-60.) Alston gave Newman financial data about NSI's Merry Maids account and prepared financial projections of Terminix's potential savings from the NSI program. (Newman Dep. 61-65 and Ex. 4.) Terminix began a pilot program with NSI in late 2002. In January 2003, Alston received her first five percent commission check for the Terminix account. (A. Hall Dep. at 37-39, Dep. Ex. 3.)

According to Alston, NSI provided summary statements with her commission checks. (Pl.'s Resp. in Opp. to Defs.' Mem. in Supp. of Mot. for Summ. J. 12-13.) From 1999 until August 2003, the information on these summary statements indicated that Alston was paid five percent of the gross revenue on the Merry Maids account (and, beginning in 2003, the Terminix account). (Affidavit of Sally Alston (5/5/08) at ¶¶ 2-4, 8.) These summary statements did not indicate that any deductions or payments were made from the gross revenue before Alston's commission was calculated. (Id.) In February 2003, NSI began

3

subtracting certain fees from the gross revenue before calculating Alston's commission. (Id. at ¶ 8; Alston Dep. at 297-308.) In 2005, NSI began subtracting sales tax and the administration fee from the gross revenue before calculating Alston's commission. (A. Hall Dep. at 56-57; Alston Dep. at 303-04.) Alston was not aware of any of these deductions, and they were not apparent from the statements she received. (Alston Dep. at 297-308; D. Hall Dep. at 208-09; A. Hall Dep. at 56-57, 61-62.)

In August 2003, Hall notified Alston that the Merry Maids account was losing money and asked her to agree to a reduced commission rate of three percent. (Alston Dep. at 315-20.) Alston agreed. (Id.) There was no discussion of reducing her commission on the Terminix account at that time. (Affidavit of Sally Alston at ¶ 9, Ex. 30.) In August 2003, NSI reduced Alston's commission rate on both the Merry Maids and Terminix accounts from five percent to three percent. (Alston Dep. at 330-31.) In June 2004, Dan Hall mentioned to Alston that her Terminix commission might need to be decreased. Alston did not agree to this decrease. (Affidavit of Sally Alston (5/5/08) at ¶ 9.)

In September 2003, Newman sent an email to Howard at Terminix, notifying him that Alston was officially off the Terminix account. (Alston Dep. at 260-61; S. Howard Dep., Ex.

4

9.) Alston continued to receive commission checks on this account until January 2006. She insists that she did not know she was taken off the Terminix account until the Newman-Howard email was produced during discovery. (Alston Dep. at 260-61.)

On January 24, 2006, Dan Hall told Alston that NSI no longer needed her services. (Alston Dep. at 91.) The same day, he mailed Alston a check for overdue commissions. (Pl.'s Resp. in Opp. to Defs.' Mem. in Supp. of Mot. for Summ. J. 22, citing Defs.' Mem. in Supp. of Mot. to Transfer, Ex. A.)

In Plaintiff's second Amended Complaint, she brings claims for breach of contract, fraudulent misrepresentation, promissory fraud, and *quantum meruit*. Defendants moved for summary judgment on all claims.

**II. Standard of Review**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is

unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, however, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc.,799 F.2d 1128, 1133 (6th Cir. 1986) see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must – by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see also Abeita v. TransAm. Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). However, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient.'" Street v. J.C. Bradford & Co., Inc., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**III. Analysis**

Both NSI and Hall seek summary judgment on all claims. As to the breach of contract claim and the *quantum meruit* claim, the Court DENIES summary judgment for NSI and GRANTS summary judgment for Hall. As to the remaining claims (fraudulent misrepresentation and promissory fraud), the Court GRANTS summary judgment for both NSI and Hall. The Court also GRANTS summary judgment for both Defendants on Plaintiff's claims to punitive damages and attorneys' fees.

Breach of Oral Contract

Defendants first argue that they are entitled to summary judgment on Alston's breach of contract claim because there was no contract. According to Defendants, there was no "meeting of the minds as to the essential terms of a contract" and, therefore, the discussions between Alston and Defendants did not create a binding agreement. (Def.'s Mem. 4.) Viewing the facts in the light most favorable to Alston, however, the Court must credit Alston's account of the 1998 conversation with Hall. Although she could not remember the exact words of the conversation, Alston's testimony indicates that the parties agreed to a contract with reasonably certain terms. Furthermore, the course of dealing between the parties is

consistent with the oral contract Alston describes. Defendants initially paid Alston five percent of the gross revenue on the Merry Maids and Terminix accounts. Viewing the evidence in the light most favorable to Alston, the Court cannot conclude as a matter of law that no oral contract existed between the parties.

Alternatively, Defendants argue that they are entitled to summary judgment on the Terminix breach of contract claim because Alston did not provide the lead that resulted in NSI's agreement with Terminix. The conflicting evidence on the material issue of whether Alston provided the lead, however, makes the claim unsuitable for summary judgment. While Defendants point to evidence that Scott Newman provided the lead through his friendship with Steve Howard, Alston presents evidence that she worked to get the Terminix account for several years, that Hall acknowledged these efforts by email in February 2003, and that she received commission checks for the Terminix account from 2003 until 2006. Viewing the evidence in the light most favorable to Alston, a reasonable jury could conclude that Alston provided the lead (and helped to procure) the Terminix account.

Defendants also argue that Alston's Terminix compensation was for administrative work, rather than a commission for helping to procure the account. Defendants argue that Alston is therefore not entitled to Terminix compensation after her

separation from NSI in January 2006.  Alston points to evidence, however, that her Terminix compensation was a commission.  Alston presents evidence that she helped to obtain the Terminix account, prepared reports and projections used to obtain the Terminix account, and was paid a commission once the account was obtained.  Furthermore, Alice Hall, Daniel Hall's wife and an employee of NSI, referred to Alston's compensation as a "commission" in her deposition.  (Alice Hall Dep. 56-57.)  Alston continued to receive compensation from the Terminix account even after NSI sent an email to Howard stating that Alston had been removed from the project.  Viewing the evidence in the light most favorable to Alston, the Court cannot conclude as a matter of law that Alston's compensation was for administrative work.

With respect to the Merry Maids commission, Defendants argue that their failure to pay Alston five percent commission was not a breach because Alston agreed to reduce her commission to three percent.  The Court agrees.  Alston admits that she agreed to reduce her Merry Maids commission to three percent.  (S. Alston Dep. 315-20.)  Defendants are therefore entitled to summary judgment that they did not breach an oral contract with Alston when they reduced her commission on the Merry Maids account from five percent to three percent.  Alston's argument

that she was fraudulently induced to agree to the reduction is addressed below.

With respect to the Terminix commission, Defendants argue that it is "undisputed" based on the "course of dealing" between the parties that Alston agreed to a reduction from five percent to three percent. (Def.'s Mem. 25-28.) The Court disagrees. Alston testified that the conversations about reducing her commission only involved Merry Maids. She further testified that when Dan Hall asked her about reducing her Terminix commission in 2004, she did *not* agree to the reduction. In support of their argument that Alston agreed to the reduction, Defendants point out that the reduction was "plainly evident" from the summary statements she received. (Def.'s Mem. 27-28.) The fact that Alston could have discovered, by calculating her commission rate based on the summary sheet, that Defendants reduced her commission to three percent does not establish as a matter of law that Alston agreed to the reduction. Viewing the evidence in the light most favorable to Alston, a reasonable jury could conclude that she did not agree to the reduction on the Terminix account and was not aware of the reduction. Therefore, Defendants are not entitled to summary judgment on this issue.

Fraudulent Misrepresentation

The elements of fraudulent misrepresentation are: (1) intentional misrepresentation of material fact; (2) knowledge of the representation's falsity; (3) injury caused by reasonable reliance on the misrepresentation; and (4) the misrepresentation involves a past or existing fact. Spectra Plastics, Inc. v. Nashoba Bank, 15 S.W.3d 832, 840-41 (Tenn. Ct. App. 1999); Honeycutt v. First Fed. Bank, 278 F.Supp.2d 893, 897 (W.D. Tenn. 2003).

Alston claims that Defendants induced her to agree to a reduced commission rate on the Merry Maids account by intentionally misrepresenting that the account was losing money. (Pl.'s Resp. 45-46.) Specifically, Alston testified that Dan Hall told her that he could not make money on the Merry Maids account and could not afford to pay her the five percent commission on that account. (Alston Dep. 316-17.)[1]

Alston's fraudulent misrepresentation claim cannot survive summary judgment because she has presented no evidence from which a jury could reasonably conclude that Hall's statement was untrue. She offers no evidence to suggest that the Merry Maids

---

[1] Alston also argues that Defendants fraudulently misrepresented that only her Merry Maids commission would be reduced, when they intended to reduce her Terminix commission as well. (Pl. Resp. 50.) The parties disagree as to whether Alston agreed to reduce her Terminix commission to three percent in 2003. However, there is no evidence in the record that there was any misrepresentation involved. Alston does not identify any allegedly false representation about her Terminix commission. Rather, she argues that the conversations related exclusively to the Merry Maids account and that the parties did not discuss changing the Terminix commission at all. The change in her Terminix commission may have been a breach of contract, but it was not the result of fraudulent misrepresentation.

account was *not* losing money. She admits that she does not know whether the Merry Maids account was profitable in August 2003 (Alston Dep. 321.) and that, to her knowledge, "none of the information [Hall] provided was false." (Alston Dep. 323.) Alston admits receiving a copy of the letter NSI's accountant, Amos Mitchim, sent to Chip Fullerton at Merry Maids. (Alston Dep. 329.)[2] In that letter, Mitchim states that NSI is losing money on the Merry Maids program. Alston testified that she had no knowledge that Mitchim's statement was untrue. (Id.)

In support of her claim, Alston focuses on the fact that Hall did not reveal NSI's twenty-five percent Quality Incentive discount before she agreed to a reduced commission. Alston claims that if she had known about the discount, she "would have realized that Mr. Hall's omission was not being truthful" and she would not have agreed to reduce her commission. (Pl. Resp. 47.) The crux of Alston's argument is that Hall's omission of the discount information was an intentional misrepresentation of material fact upon which she relied to her detriment.

Although this omission might amount to a misrepresentation in other circumstances, it does not rise to such a level in this instance. Alston does not claim that Hall attempted to persuade

---

[2] Alston argues that neither the Mitchim letter nor the Mitchim affidavit account for the discount. Even if Mitchim did not know about the discount, however, Alston has not met her burden to present evidence that Hall's statement was false. Instead, she has undermined one piece of evidence which supports finding that Hall's statement was true. Defendants' need not prove that Hall's statement was true; it is Alston's burden to create an issue of material fact that it was false.

her that NSI was losing money on the account by disclosing costs, losses, projections, etc. In that context, the omission of the Quality Incentives discount might have amounted to misrepresentation of material fact because Alston's decision about her commission would be based on the financial information Hall provided. For example, if Hall had disclosed most of NSI's profits and costs, but selectively withheld the discount in order to deceive Alston into believing the Merry Maids account was losing money, the omission could rise to a misrepresentation. Alston admits, however, that she did not know the costs associated with the account. (Alston Dep. 321.) Her decision to accept a reduced commission was based not on specific financial information but on Hall's representation that the account was losing money.

In the absence of any evidence that NSI was not losing money on the Merry Maids account, Alston cannot establish the first element of her fraudulent misrepresentation claim. Defendants, therefore, are entitled to summary judgment.

Promissory Fraud

The first three elements of promissory fraud are identical to those for fraudulent misrepresentation: (1) intentional misrepresentation of material fact; (2) knowledge of the representation's falsity; and (3) injury caused by reasonable reliance on the misrepresentation. Spectra Plastics, Inc. v.

Nashoba Bank, 15 S.W.3d 832, 840-41 (Tenn. Ct. App. 1999); Carter v. Patrick, 163 S.W.3d 69, 77 (Tenn. Ct. App. 2004). While fraudulent misrepresentation involves representations about the present or the past, the fourth element of promissory fraud requires that the misrepresentation involve a promise of future action with no present intent to carry out the promise. Id.

Alston claims that, in 1998, Defendants had no intent to perform their promise to pay her a five percent commission on the gross revenue of every account she helped to procure. (Pl. Resp. 54.) Alston urges the Court that Defendants' intent to break their promise is evident from their conduct. (Pl. Resp. 53.) However, the only evidence Alston offers to support her view is "[t]he fact that Dan Hall claims to be unable to recall the terms of the agreement." (Id.) The Court is not convinced that Dan Hall's purported inability to recall the terms of the 1998 agreement supports Alston's claim. The evidence in the record indicates that Defendants paid Alston commissions from 1999 until 2006. Defendants' conduct, therefore, counsels against a finding that they did not intend to perform their 1998 promise. Mere failure to perform a promise, standing alone, is not sufficient to prove that Defendants never intended to perform. See Noblin v. Christiansen, No. M2005-01316-COA-R3-CV, 2007 WL 1574273, at *31 (Tenn. Ct. App. May 30, 2007).

Alston is correct that present intent not to perform a promise is a question of fact. (Pl. Resp. 53.) Alston has presented no evidence, however, from which a reasonable jury could conclude that Defendants, in 1998, did not presently intend to perform their promises. Defendants are therefore entitled to summary judgment on Alston's promissory fraud claim.

*Quantum meruit*

Plaintiff pleads *quantum meruit* as an alternative ground for recovery. To recover under *quantum meruit*, Alston must show: (1) she provided a valuable service to Defendants; (2) Defendants received or utilized the service; (3) the parties reasonably understood that Alston would be compensated for the service; and (4) it would be unjust for Defendants to retain the services without payment. See Swafford v. Harris, 967 S.W.2d 319, 324 (Tenn. 1998). A recovery under *quantum meruit* is based on the reasonable value of the services provided. Castelli v. Lien, 910 S.W.2d 420, 427 (Tenn. App. 1995).

Defendants argue that Alston cannot recover in *quantum meruit* because "NSI compensated throughout the years that she performed services" for them and she "has not presented any proof whatsoever of the reasonable value of her services." (Defs.' Mem. in Supp. of Mot. for Summ. J. 37.) According to Defendants, Alston therefore "cannot prove that her services

15

were more valuable than the compensation she received from NSI . . . ." (Id.)

Alston's *quantum meruit* claim, however, does not seek compensation for servicing the Terminix and Merry Maids accounts. Alston seeks compensation for one particular service, the "valuable service" of "helping procure contracts for NSI." (Pl. Second Am. Compl. ¶ 2.) According to Alston, Defendants have received, and continue to receive, a benefit from that service. The crux of Alston's argument is that her help in procuring the accounts was more valuable than the compensation she received for that service. Defendants are correct that Alston's recovery under a *quantum meruit* theory is limited to the reasonable value of her services. They are incorrect, however, that Alston has pointed to no evidence of the reasonable value of helping to procure the Merry Maids and Terminix accounts. Alston's account of her conversation with Daniel Hall, the payments she received, and the way in which these payments were calculated, may all be used as evidence to establish the reasonable value of her services.

Plaintiff is entitled to present this alternative theory of recovery to the jury. Viewing the evidence in the light most favorable to Plaintiff, even if the jury concludes that there was no contract between Plaintiff and NSI, a reasonable jury could conclude that Plaintiff is entitled to recover the

difference between (1) the reasonable value of her help procuring the Terminix and Merry Maids accounts and (2) the compensation she received from NSI for this service. The Court, therefore, DENIES summary judgment on the *quantum meruit* claim.

### Punitive Damages

Alston's claim to punitive damages is based on Defendants' fraudulent misrepresentation. As discussed above, Defendants are entitled to summary judgment on that claim. Defendants, therefore, are entitled to summary judgment on Alston's claim for punitive damages as well.

### Attorneys' Fees

Alston conceded in the telephonic hearing on this motion that she was not entitled to attorneys' fees. The Court agrees. There is no statutory or contractual basis for awarding attorneys' fees in this case. Accordingly, Defendants are entitled to summary judgment on Alston's claim to attorneys' fees.

### Defendant Daniel C. Hall

Alston concedes that Daniel Hall cannot be held personally liable for breach of contract because he was not a party to her contract with NSI. (Pl.'s Resp. to Def. Daniel C. Halls' Mot. for Partial Summ. J. 1.) Daniel Hall also may not be held personally liable on a theory of *quantum meruit* because it was

NSI, not Hall individually, that benefited from Plaintiff's service.

Alston's claims against Daniel C. Hall for fraudulent misrepresentation and promissory fraud and for punitive damages and attorneys' fees, fail for the reasons discussed above.

Therefore, the Court grants summary judgment on all claims to Defendant Daniel C. Hall, individually and d/b/a National Safety Incentives, Inc.

**IV. Conclusion**

For the reasons set forth above, Defendant Daniel C. Hall's Motion for Partial Summary Judgment (Doc. 64) is GRANTED. Defendants National Safety Incentives, Inc. ("NSI") and Daniel C. Hall's Motion for Summary Judgment (Doc. 65) is GRANTED as to the fraudulent misrepresentation and promissory fraud claims and DENIED as to the breach of contract and *quantum meruit* claims.

SO ORDERED this 3rd day of November, 2008.

/s/ JON P. McCALLA
UNITED STATES DISTRICT JUDGE